IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIAN TAYLOR** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:20cv319-HSO-RHWR** |
| | § | |
| | § | |
| **HARRISON COUNTY, MISSISSIPPI,** | § | |
| **HARRISON COUNTY TAX** | § | |
| **ASSESSOR PAULA LADNER,** *and* | § | |
| **PAULA LADNER INDIVIDUALLY** | § | **DEFENDANTS** |

<u>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS
HARRISON COUNTY, MISSISSIPPI, HARRISON COUNTY TAX ASSESSOR
PAULA LADNER, AND PAULA LADNER INDIVIDUALLY'S MOTION [34]
FOR SUMMARY JUDGMENT**</u>

**BEFORE THE COURT** are Defendants Harrison County, Mississippi,

Harrison County Tax Assessor Paula Ladner, and Paula Ladner Individually's

Motion [34] for Summary Judgment.  The Motion is fully briefed. Having considered

the Motion on its merits, the related pleadings, the record, and relevant legal

authority, the Court is of the opinion that Defendants' Motion [34] for Summary

Judgment should be granted.

I. <u>BACKGROUND</u>

A.    <u>Factual background</u>

In 1999, Plaintiff Brian Taylor ("Mr. Taylor" or "Plaintiff") was in an

automobile accident and suffered a traumatic brain injury. Ex. [37-1] at 15-16. As a

result, he suffers from medical issues related to this injury, including PTSD,

anxiety, depression, and ADHD. *Id.* at 10.

The undisputed summary judgment evidence reflects that Mr. Taylor began working for the Harrison County, Mississippi, Tax Assessor in 2007 as a Field Appraiser, which involved visiting properties throughout the County to assess their value for tax purposes. *Id.* at 37. Office policy required that Field Appraisers, such as Mr. Taylor, drive their personal vehicles to the office, clock in, and then take a County vehicle to the properties where they were working. *Id.* at 43, 90. Lunch breaks and two 15-minute breaks were automatically deducted in the time-keeping system, so it was not necessary for Mr. Taylor to return to the office to clock out for breaks. *Id.* at 90.

Mr. Taylor worked in this position from 2007 until 2019 under then-Harrison County Tax Assessor Tal Flurry. *Id.* at 21. Defendants Harrison County, Mississippi, Harrison County Tax Assessor Paula Ladner and Paula Ladner individually (collectively, "Defendants") assert that in the summer of 2019, "employees began to notice the Plaintiff, Brian Taylor, was not turning in his work." Mem. [35] at 8. Defendants have produced evidence of seven different instances when either Defendant Paula Ladner ("Ms. Ladner"), who was then the chief administrative officer for the Harrison County Tax Assessor's Office, or Mr. Robert Stinziano, the chief appraiser, noticed that Mr. Taylor was arriving late to work, sleeping, or otherwise not completing his job assignments. Ex. [34-8] at 1-8. Mr. Taylor has not contradicted this evidence.

When queried about his behavior in August 2019, Mr. Taylor told Ms. Ladner and Mr. Stinziano that his doctor was changing his medications, which caused

fatigue and caused him to fall asleep at work; he claims that he reiterated this to Ms. Ladner again in January 2020. Ex. [37-1] at 27; Ex [34-6] at 38-39. Ms. Ladner was aware of Mr. Taylor's vehicle collision in 1999 and knew that his doctor was adjusting his medication for anxiety, *id.* at 37-38, but did not recall any specifics of his injuries from the accident, *id.* at 73.

In 2019, Mr. Flurry decided not to run for re-election, and Ms. Ladner ran for the position, was elected, and was sworn in on January 6, 2020. Mem. [35] at 8. After Ms. Ladner was sworn in as the Tax Assessor, Ex. [34-6] at 11, on January 7, 2020, she and Mr. Stinziano met with Mr. Taylor to tell him that he would no longer be working as a Field Appraiser, but would instead be working in the office, *id.* at 9. This decision was partially to monitor Mr. Taylor's performance more closely, and partially to help with office tasks, such as answering phone calls, during a busy time of the year. Ex. [34-7] at 52.

Employees who worked in the office were required to clock in no earlier than 7:30 a.m. and clock out no later than 5:30 p.m., with working hours beginning at 8:00 a.m. and ending at 5:00 p.m. Ex. [34-5] at 9. Office policy also required that all employees clock out for lunch or when leaving work for personal reasons. *Id.* Defendants assert, and Mr. Taylor has not disputed with competent evidence, that when he began working in the office, he would not clock in or clock out appropriately; for example, he would take lunch breaks without clocking out. Ex. [34-6] at 56. Ms. Ladner reminded Mr. Taylor about the importance of clocking in

and out appropriately several times over the ten days he worked in the office. *Id.* at 60.

It is undisputed that, on January 17, 2020, Mr. Taylor clocked in late at 8:05 am, but instead of beginning his work duties, he immediately left the office without clocking out. *Id.* at 58. He was later found in his car in the employee parking garage. *Id.* In response to this incident, Ms. Ladner terminated Mr. Taylor's employment. Ex. [34-5] at 85.

B.    Procedural history

Mr. Taylor filed suit in this Court against Defendants, alleging that he was terminated in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Mississippi state law. Compl. [1] at 1.

Defendants have filed the present Motion [34] for Summary Judgment arguing that there is no genuine issue of material fact to be decided by a jury, Mot. [34] at 1, because Mr. Taylor was terminated for his own misconduct, and not because of his disability, Mem. [35] at 1. In his Response, Mr. Taylor concedes his Title VII and state-law claims, but maintains that his rights under the ADA and FMLA were violated. Mem. [38] at 2. Accordingly, Mr. Taylor's Title VII and state-law claims will be dismissed.

Mr. Taylor claims that his rights under the ADA were violated when Ms. Ladner fired him on the basis of his disability and failed to make reasonable

accommodations for him. Compl. [1] at 5. He asserts that his medication that helps him manage his disability makes him fatigued, and that Ms. Ladner was aware of this. Mr. Taylor contends that because Ms. Ladner knew this, she should have worked with him to reach a reasonable accommodation, rather than terminating his employment. Mem. [38] at 13.

Mr. Taylor further asserts that his rights under the FMLA were violated when Ms. Ladner failed to advise him of his FMLA rights, which he claims she had a duty to do. *Id.* at 15. He argues that even though he never expressly mentioned the FMLA, Ms. Ladner's awareness of his medical history placed her under a duty to inquire "as to the nature of Mr. Taylor's absences and provide him notice of eligibility and rights and responsibilities under the FMLA." *Id.* at 16.

## II. DISCUSSION

### A.   Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies this burden, the nonmovant must present evidence beyond the pleadings that demonstrates "specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the nonmovant must show, with "significant probative evidence," that there exists a genuine issue of material fact for resolution at trial. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

In deciding whether summary judgment is appropriate, the Court views all facts and inferences in the light most favorable to the nonmovant. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, conclusory allegations and unsubstantiated assertions are not enough for a nonmovant to survive a motion for summary judgment. *Wallace v. Tex. Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996). If the nonmoving party does not present sufficient evidence to establish an essential element of his claim, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

B.   Mr. Taylor's ADA claims

1.   ADA disparate treatment claim

Mr. Taylor asserts that he was terminated because of his disability. Compl. [1] at 5. He alleges that the employee handbook he was provided called for progressive disciplinary action for employees who violate office policies, but that Ms. Ladner instead proceeded immediately to termination. *Id.*

"A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the indirect method of proof set for Title VII actions in *McDonnell Douglas Corp. v. Green* may also be utilized." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Because Mr. Taylor has not presented any direct evidence of disability discrimination, the *McDonnell Douglas* framework applies. *See id.* Under this framework, a plaintiff must first make a prima facie showing of discrimination by establishing that: "(1) [he] suffers from a disability; (2) [he] is qualified for the job; (3) [he] was subject to an adverse

employment action; and (4) [he] was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Milton v. Texas Dep't of Crim. Just.,* 707 F.3d 570, 573 (5th Cir. 2013) (citing *Daigle*, 70 F.3d at 396).

In his brief, Mr. Taylor maintains that he can satisfy all four prongs because Ms. Ladner did not provide a written reason for terminating him, in violation of office policy, and because Ms. Ladner "gave three different reasons for terminating his employment between the Mississippi Department of Employment Security and her deposition testimony," which he claims "raises a genuine issue of fact regarding pretext." Mem. [38] at 11.

Based upon the uncontroverted summary judgment evidence, however, Mr. Taylor cannot satisfy the third or fourth prongs of a prima facie case. First, he has not created a material fact question that the adverse employment action he suffered was on account of his disability. It is undisputed that Ms. Ladner directed Mr. Taylor to track his time accurately, but after multiple warnings, he repeatedly failed to clock into and out of work appropriately, Ex. [34-6] at 56-60, and the ultimate reason for Mr. Taylor's termination was that he clocked into work on January 17, 2020, and then left the office without clocking out, *id.* at 58. Ms. Ladner responds that she did discuss the reasons for Mr. Taylor's termination with him, *id.* at 68, while Mr. Taylor claims that Ms. Ladner never gave him a reason for his termination, Ex. [34-4] at 236-237; Mem. [38] at 9. To the extent there is any factual dispute on this point, it is not material.

Defendants further maintain that Mr. Taylor effectively falsified the number of hours he worked in the office's time-keeping system, which was also grounds for termination. *Id.* at 59. Mr. Taylor has not presented any summary judgment evidence, beyond his subjective belief that these reasons were false or that he was terminated on account of his disability, to controvert Defendants' evidence.

Even assuming Mr. Taylor has presented such evidence, he has not presented sufficient summary judgment evidence to satisfy the fourth prong of the *McDonell Douglas* framework, namely that he was replaced by anyone at all, with or without a disability. Defendants have submitted competent evidence that Ms. Ladner did not hire anyone to fill Mr. Taylor's position in the office, *id.* at 95, and he has not presented any evidence to the contrary, *see* Resp. [37]. Nor has Mr. Taylor argued or presented any evidence to show that he was treated less favorably than a non-disabled employee. *See id.* For these reasons, he cannot establish a prima facie case of disparate treatment under the ADA.

If Mr. Taylor had somehow established a prima facie case of disability discrimination, the burden would shift to Defendants to show "some legitimate nondiscriminatory reason for its action that adversely affected the employee . . . If the employer produces any evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle,* 70 F.3d at 396. Defendants have produced competent evidence in the form of deposition testimony and written disciplinary records to support their position that the

8

nondiscriminatory reason for Mr. Taylor's termination was his persistent violation of time-keeping procedures. Ex. [34-6] at 56-68; Ex. [34-8] at 1-16. This is sufficient to carry Defendants' burden of production.

Because Defendants have articulated a legitimate, nondiscriminatory reason for their termination decision, "[Mr. Taylor] must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* Conjecture and subjective belief cannot satisfy the requirement for evidence of pretext. *Haley v. All. Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004).

Mr. Taylor contends that Ms. Ladner's "inconsistent explanations [to the Mississippi Department of Employment Security] . . . cast doubt on the truthfulness of those explanations." *Id.* However, Mr. Taylor has pointed to no competent summary judgment evidence showing what Ms. Ladner conveyed to the Mississippi Department of Employment Security ("MDES"), except from her deposition, in which she testified that she told MDES that she terminated Mr. Taylor because of his repeated failure to clock in and clock out appropriately, despite multiple warnings. *See* Ex. [37-2] at 56-69. Mr. Taylor has presented no evidence to contradict this testimony, and "[b]are allegations" are insufficient to establish discrimination and avoid summary judgment. *Hervey v. Miss. Dep't of Educ.*, 404 F. App'x 865, 870 (5th Cir. 2010) (citing *Laxton*, 333 F.3d at 579) ("not having received

disciplinary actions and meeting the minimum level of expectation" was not "sufficient evidence to defeat summary judgment, regarding whether she was performing her job at a level at which there could be no legitimate, nondiscriminatory reason for [the plaintiff's] termination"). For these reasons, Mr. Taylor cannot support a case of disability discrimination under the ADA. Summary judgment is appropriate.

2.    Mr. Taylor's ADA reasonable accommodations claim

Mr. Taylor next asserts that he was denied reasonable accommodations under the ADA because his supervisors "Paula Ladner and Robert Stinziano [were placed] on notice of his medication changes that were resulting in sleepiness at work, [such that] Mr. Taylor made a request for a reasonable accommodation." Mem. [38] at 13. Rather than engaging in a good faith interactive process, as required by the ADA, Defendants purportedly violated the ADA by "discharg[ing] [Mr. Taylor] instead of considering the requested accommodations." *Id.*

The ADA requires employers to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A); *see also US Airways, Inc. v. Barnett,* 535 U.S. 391, 402 (2002). In order to survive a motion for summary judgment, a plaintiff must present evidence that "(1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable

accommodations for such known limitations." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 587 (5th Cir. 2020).

"Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009). Once an employee makes a request for accommodations, the employer must engage in the "interactive process" of "a meaningful dialogue with the employee to find the best means of accommodating that disability." *Id.* While Mr. Taylor is "not required to come up with the solution  . . . on [his] own," *id.* at 621, "an employee cannot remain silent and expect his employer to bear the burden of identifying the need for and suggesting appropriate accommodation," *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

Mr. Taylor maintains that "by placing his supervisors, Paula Ladner and Robert Stinziano, on notice of his medication changes that were resulting in sleepiness at work, Mr. Taylor made a request for a reasonable accommodation." Mem. [38] at 13. Even assuming Defendants were on notice of his disability, the undisputed summary judgment record reveals that Mr. Taylor failed to properly request accommodations. Ex. [37-1] at 143. Indeed, by his own admission in his deposition, Mr. Taylor did not request any accommodations:

> Q: You didn't come up with any solution or accommodation to request
> an accommodation to whatever problem you were going through?

11

A: No, I didn't. I didn't.

Ex. [34-4] at 143.

"Under the ADA, once the employee presents a request for an accommodation, the employer is required to engage in the interactive process so that *together* they can determine what reasonable accommodations might be available," *E.E.O.C.,* 570 F.3d at 621, but in order to begin the process, Mr. Taylor must have at least requested an accommodation, *see Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 165 (5th Cir. 1996) ("it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one. If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one.").

While an employee does not need to mention the ADA by name or use the precise words "reasonable accommodation," "the employee must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason." *E.E.O.C.,* 570 F.3d at 621. In other words, simply giving notice of a medical issue to an employer is not sufficient to request an accommodation – the employee bears the burden of "requesting specific reasonable accommodations." *Garner v. Chevron Phillips Chem. Co., L.P.,* 834 F. Supp. 2d 528, 565 (S.D. Tex. 2011) ("[Plaintiff] testified that although she gave [defendant] notice of her diagnoses, symptoms and medications, she did not ask for any accommodations . . . [Plaintiff] bears the burden of requesting specific reasonable accommodations

under the ADA, so [defendant] is entitled to summary judgment on the reasonable accommodations issue.").

Although Mr. Taylor has produced evidence that his employer was aware that he was experiencing side effects of switching medications, he admits he never requested any accommodation. Ex. [34-4] at 143. "[An employee]'s failure to request an accommodation means that his failure-to-engage-in-the-interactive-process claim is dead on arrival: Without a request, [an employer] could not possibly fail to engage in an interactive process." *Clark*, 952 F.3d at 588. Moreover, Mr. Taylor has made no attempt to explain how any fatigue from medication would explain his repeated failure to clock in or clock out appropriately, or his leaving work on January 17, 2020. Summary judgment is appropriate on this claim.

C.    FMLA Interference Claim

Mr. Taylor asserts that Defendants interfered with his right to FMLA leave by failing to advise him of his rights under the FMLA. Mem. [38] at 15. He maintains that Defendants' "failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." *Id.* (citing *Downey v. Strain*, 510 F.3d 534, 540 (5th Cir. 2007)).

"To establish a prima facie case of interference under the FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). To ensure employees the right to take medical leave, the FMLA prohibits an

employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right" provided by the FMLA. 29 U.S.C. § 2615(a)(1).

Mr. Taylor takes the position that Defendants interfered with his FMLA rights by not informing him of them; however, the undisputed summary judgment evidence is that Defendants informed Mr. Taylor of his rights under the FMLA in the employee personnel policy handbook provided to him in 2012 and in 2020, and for which he signed. Ex. [34-5] at 1. An employee handbook can be a sufficient method of informing employees of their FMLA rights. *See Hinojosa v. Pearsall Indep. Sch. Dist.,* No. SA-10-CA-993, 2011 WL 13244944, at *2 (W.D. Tex. July 22, 2011) (summary judgment was appropriate when plaintiff "was furnished with an employee handbook which contained a description of the FMLA and outlined the circumstances under which its benefits might be available to employees" and plaintiff never requested FMLA leave).

The employee handbook in the record in this case clearly sets out the rights afforded to employees under the FMLA and the relevant eligibility requirements:

> **Family and Medical Leave** – The Family and Medical Leave Act of 1993 (FMLA) entitled eligible employees to take up to twelve (12) weeks of paid/unpaid, job protected leave each year, with no loss of accumulated service for specified family and medical reasons.
> To be eligible for FMLA benefits, and employee must:
> (1)   Have worked for Harrison County for at least twelve (12) full months;
> (2)   Have worked at twelve hundred fifty (1250) hours over the previous twelve months; and
> (3)   Must have a covered family or medical condition.
> **Leave Entitlement.** Harrison County will grant an eligible employee up to a total of twelve (12) workweeks of paid/unpaid leave during a 12-month period (beginning from the date the

employee is first placed on Family and Medical Leave) for one or more of the following reasons:

    (1)   . . .

    (2)   Continuing treatment by, or under the supervision of, a health care provider for a chronic or long term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three (3) calendar days

Ex. [34-7] at 17.

As noted earlier, it is undisputed that Mr. Taylor signed for an employee handbook containing this notice. Ex. [34-5] at 1.

Mr. Taylor also cannot satisfy the fourth prong of a prima facie case of interference because he admits in his deposition that he never made a request for FMLA leave. Ex. [34-4] at 67. Mr. Taylor argues that when his work performance declined, his supervisors "were under a duty to inquire as to the nature of Mr. Taylor's absences and provide him notice of eligibility and rights and responsibilities under the FMLA." Mem. [38] at 16. However, "[w]hile an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir.1998).

The fact that Ms. Ladner was aware of Mr. Taylor's injuries is not, by itself, sufficient to have placed Defendants on notice of a probable basis for FMLA leave. *See Seaman,* 179 F.3d at 302 (employee's reference to his mental condition without a request for time off did not constitute the requisite notice of an intent to invoke FMLA leave); *see also Hice v. David J. Joseph Co.*, 182 F. Supp. 3d 775, 785 (S.D. Ohio 2016) (even though his supervisors at company were aware that a plaintiff had

15

anxiety and issues with his sleep, the plaintiff had never asked for FMLA leave, and as such "his employer did not deny him any rights under [the FMLA]," precluding an FMLA interference claim); *Aguirre v. Mayaguez Resort and Casino, Inc.,* 59 F. Supp. 3d 340, 357 (D.P.R. 2014) (although she informed her employer of an FMLA-qualifying situation, the plaintiff could not state a prima facie case of FMLA interference because she never indicated that she wished to take a leave of absence); *Caskey v. Colgate-Palmolive Co.,* 438 F. Supp. 2d 954, 965 (S.D. Ind. 2006) (employer's knowledge of fact that employee sustained injury was insufficient to put them on notice of probable basis for FMLA leave, because the employee never provided even oral notice that she needed medical leave).

The undisputed evidence is that Mr. Taylor merely made comments that he was "having anxiety due to medication changes," Mem. [38] at 16, but not that he felt the need to take leave, medical or otherwise, Ex. [34-4] at 67.[1]  This is insufficient to establish a prima facie case of FMLA interference. This claim should be dismissed.

---

[1] The duty of an employer to inquire appears in cases where employees request leave for medical purposes without expressly invoking the FMLA. *See, e.g., Miles-Hickman v. David Powers Homes, Inc.,* 589 F. Supp. 2d 849, 874 (S.D. Tex. 2008) (where plaintiff asked a co-worker to cover her shift because she was feeling ill, and the co-worker mentioned plaintiff's illness to a human resources employee); *Crain v. Schlumberger Tech. Co.,* No. CV 15-1777, 2017 WL 713673, at *3 (E.D. La. Feb. 23, 2017) (plaintiff sent an email to a human resources representative at her employer inquiring about short term disability). Here, the uncontroverted record reflects that Mr. Taylor never made any request of this nature, which was insufficient to place Defendants on notice.

III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed any of the parties'
arguments, it has considered them and determined that they would not alter the
result. Defendants' Motion [34] for Summary Judgment should be granted.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [34]
for Summary Judgment filed by Defendants Harrison County, Mississippi, Harrison
County Tax Assessor Paula Ladner, and Paula Ladner individually, is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Brian
Taylor's claims are **DISMISSED WITH PREJUDICE.** A separate final judgment
will be entered pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 8th day of March, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

17